ORAL ARGUMENT NOT YET SCHEDULED

## No. 11-3080

IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

United States of America,

Appellee,

v.

Fraser Verrusio,

Appellant.

On Appeal from the United States District Court

for the District of Columbia, Case No. 1:09-cr-00064

### CORRECTED REPLY BRIEF FOR APPELLANT

Richard P. Sobiecki
Vernon A. A. Cassin III
Daniel Starck
Baker Botts L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
rich.sobiecki@bakerbotts.com
(202) 639-7700

A.J. Kramer
Federal Public Defender
Rosanna Taormina
Assistant Federal Public Defender
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
A._J._Kramer@fd.org
Rosanna_M_Taormina@fd.org
(202) 208-7500

*Counsel for Appellant Fraser Verrusio*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES ......................................................... iii

SUMMARY OF THE ARGUMENT ....................................................1

ARGUMENT ....................................................................................4

I.    THE INDICTMENT VIOLATED THE GRAND JURY CLAUSE
      BECAUSE IT FAILED TO ALLEGE AN OFFICIAL ACT.........................4

      A.   The Government Has Waived Its Argument That the Indictment
           Alleged an Official Act. ..........................................................5

      B.   Even If the Government Has Not Waived Its "Assistance" Theory,
           Count 2 Still Fails to Allege an Official Act Because "Assistance"
           Lacks a Direct Connection to the Governmental Decision-Making
           Process....................................................................................9

      C.   Even If the Government Has Not Waived Its "Assistance" Theory,
           Count 2 Still Fails to Allege an Official Act Because "Assistance"
           Lacks the Required Specificity. ...........................................10

      D.   Even if the Government Has Not Waived Reliance on the Five Acts, the
           Five Acts Do Not Allege an Official Act Because They Were Not
           Contemplated When Mr. Verrusio Accepted the New York Trip.........12

II.   THE GOVERNMENT FAILED TO PROVE THAT MR. VERRUSIO
      CONTEMPLATED A SPECIFIC OFFICIAL ACT. ...................................13

III.  THE GOVERNMENT FAILED TO PROVE THAT MR. VERRUSIO
      MADE A FALSE AND MISLEADING STATEMENT. ...........................14

      A.   A Reasonable Juror Could Not Find Falsity Because the Government
           Failed to Differentiate Between Reportable "Gifts" and "Travel.".......15

      B.   A Reasonable Juror Could Not Find Materiality Because the
           Government Failed to Introduce Any Evidence (Which It Easily Could

Have) Concerning How Accurate Reporting by Mr. Verrusio Could
Have Influenced the Conduct of the Ethics Committee. .......................18

IV.   A CRIMINAL DEFENDANT'S RIGHT TO PRESENT A DEFENSE
      SHOULD TRUMP A POLITICIAN'S RIGHT TO HIDE HIS SECRET
      DEALINGS WITH LOBBYISTS...................................................................19

      A.   Mr. Verrusio Did Not Waive His Challenge to the District Court's
           Application of the Speech or Debate Clause. .........................................19

      B.   No Court Has Ever Used the Speech or Debate Clause to Deny a
           Criminal Defendant Access to Material Evidence.................................22

      C.   Mr. Verrusio Repeatedly Explained Why Curry's Testimony Was
           Material. ...............................................................................................24

      D.   If a Branch of the Government Stands on a Privilege to Deny a
           Defendant Access to Material Evidence, the Only Acceptable Remedy
           is to Dismiss the Indictment.................................................................25

V.    THE RELEVANCE OF DEFENSE EXHIBIT 149 SHOULD NOT BE
      VIEWED THROUGH THE GOVERNMENT'S THEORY OF THE CASE.
      .................................................................................................................26

CONCLUSION........................................................................................................28

CERTIFICATE OF COMPLIANCE.....................................................................30

CERTIFICATE OF SERVICE ...............................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Christoffel v. United States,*
200 F.2d 734 (D.C. Cir. 1952)...........................................................26

*Edmond v. U.S. Postal Serv. Gen. Counsel,*
949 F.2d 415 (D.C. Cir. 1991)...........................................................19

*Neder v. United States,*
527 U.S. 1 (1999)...........................................................5

*Perdue Farms, Inc. v. NLRB,*
144 F.3d 830 (D.C. Cir. 1998)...........................................................5

*United States v. Ganim,*
510 F.3d 134 (2d Cir. 2007) ...........................................................11

*United States v. Gonzalez-Lopez,*
548 U.S. 140 (2006)...........................................................5

*United States v. Joaquin,*
326 F.3d 1287 (D.C. Cir. 2003)...........................................................20

*United States v. Pickett,*
353 F.3d 62 (D.C. Cir. 2004)...........................................................4, 5

*United States v. Redman,*
331 F.3d 982 (D.C. Cir. 2003)...........................................................8

*United States v. Resendiz-Ponce,*
549 U.S. 102 (2007) ...........................................................5

*United States v. Ring,*
706 F.3d 460 (D.C. Cir. 2013)...........................................................4

*United States v. Slough,*
641 F.3d 544 (D.C. Cir. 2011)...........................................................22

*United States v. Stadd,*
636 F.3d 630 (D.C. Cir. 2011)...........................................................18

*United States v. Sun-Diamond Growers of California*,
   526 U.S. 398 (1999)...............................................................................2, 10, 11

*Valdes v. United States*,
   475 F.3d 1319 (D.C. Cir. 2007)............................................................................9

## SUMMARY OF THE ARGUMENT

In his Opening Brief, Mr. Verrusio argued that (i) the Indictment violated the Grand Jury Clause of the Fifth Amendment; (ii) the evidence at trial, under a proper interpretation of the relevant statutes, was insufficient to support his convictions; (iii) an improper application of the Speech or Debate Clause violated his constitutional right to present a defense; and (iv) Defense Exhibit 149 was improperly excluded on relevance grounds.

Curiously, the government fails to oppose Mr. Verrusio's first argument and instead asserts that he can only pursue a sufficiency of evidence challenge. The government is mistaken—a defendant's right to a constitutionally sound indictment does not vanish once trial begins. Because the government had the opportunity to defend the Indictment, and made the express decision to not defend it (at least not with the only legal theory available to it), the Court should reverse Mr. Verrusio's convictions.

Assuming no waiver, the validity of Count 2 turns on two elements of the "official act" requirement of 18 U.S.C. § 201. *First*, what connection must the conduct constituting the official act have to the governmental decision-making process: Must the conduct involve a public official actually using his position to directly influence the process? Or, is it enough that the conduct simply have some connection to the process, no matter how tenuous? In its Response, the

1

government attempts to avoid this issue by arguing that the (only) official act alleged in the Indictment was "official assistance." But official assistance, because it provides no insight into *how* the assistance was provided, makes it impossible to know whether the official relied on his position or not, and that uncertainty means that an essential element of the offense has not been alleged.

*Second*, with what level of detail must the conduct constituting the official act be alleged. *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999), tells us that the government must allege enough detail to show that the defendant's influence stemmed from the use of his position and not merely from the sharing of publicly-available information or the discussion of strategy. "Assistance" fails that test because there are many ways that a public official could assist someone *without* using his official position.

Further, under the correct interpretation of official act, the government failed to introduce evidence sufficient to convict Mr. Verrusio of violating the gratuities statute. Rather than establishing that he used his position to influence the decision-making process, the government's Response confirms that Mr. Verrusio, at most, shared publicly-available information and generic strategies available to anyone petitioning their government with the individuals who went on the New York trip. But there was no evidence that anyone contemplated Mr. Verrusio performing *specific* acts.

2

Similarly, the government failed to meet its burden on Count 3 because it introduced no evidence differentiating between reportable "gifts" and "travel," depriving the jury of any basis to adequately understand the rules governing disclosures, and consequently, any basis for finding that Mr. Verrusio made a false statement. Nor did the government meet its burden on materiality. The government needed to show what the Ethics Committee could have done if Mr. Verrusio had *not* made his purportedly false statement, and it did not.

Next, the government effectively contends that the Speech or Debate Clause can be used to violate Mr. Verrusio's constitutional rights and that he lacks any remedy for that violation. Given the fundamental importance of a criminal defendant's rights, the Court should hold that under certain, narrow circumstances, the Speech or Debate Clause does not provide a testimonial privilege to staff. But, if it is acceptable for a government body to violate a criminal defendant's rights, then the only acceptable remedy is to dismiss the underlying charges.

Finally, the government's only real defense of the district court's decision to exclude the instructions to Schedule VII of the House financial disclosure form is that it would have had a good retort. But whether the government believes it could have responded effectively to arguments Mr. Verrusio was prevented from making does not go to whether the instructions were relevant in the first place. Those instructions were essential to Mr. Verrusio's defense because they were direct

3

evidence supporting Mr. Verrusio's argument that Schedule VI did not contain any false statements.

## ARGUMENT

## I.     THE INDICTMENT VIOLATED THE GRAND JURY CLAUSE BECAUSE IT FAILED TO ALLEGE AN OFFICIAL ACT.

The government boldly contends that Mr. Verrusio cannot challenge the legitimacy of his Indictment, but can only challenge the sufficiency of evidence introduced at trial.  *See* Gov't Br. at 27 ("[A]lthough he styles his claim as a challenge to the sufficiency of evidence, he primarily attacks the allegations in the indictment.  Verrusio focuses on the wrong thing.") (citing *United States v. Ring*, 706 F.3d 460, 469 (D.C. Cir. 2013)).  The government's reliance on *Ring* is misplaced.  There, the defendant only made a sufficiency of evidence challenge, and did not argue that his indictment was defective; therefore, *Ring* is inapposite.  *See* Brief for Kevin Ring, 2012 WL 664844, at *28–*32 (Feb. 29, 2012); Brief for United States of America, 2012 WL 1564673, at *53 (May 4, 2012).  More importantly, a defendant's right to challenge his indictment on appeal is well-established.  *See, e.g.*, *United States v. Pickett*, 353 F.3d 62, 68 (D.C. Cir. 2004) (reversing conviction where indictment failed to allege an essential element of the offense).[1]

---

[1] This Court has yet to address whether a defective indictment is a structural error subject to automatic reversal or whether it should be reviewed for harmless error.

Here, Mr. Verrusio's conviction on Count 2 (and by extension his convictions on Counts 1 and 3) must be reversed for three reasons. *First*, the government has affirmatively—although perhaps inadvertently—abandoned its defense of the Indictment. *Second*, the conduct alleged lacks the necessary connection to the governmental decision-making process. *Third*, the conduct alleged lacks the specificity necessary to determine whether Mr. Verrusio contemplated using his official position.

### A.     The Government Has Waived Its Argument That the Indictment Alleged an Official Act.

As a consequence of its erroneous conclusion regarding Mr. Verrusio's ability to challenge the Indictment, the government offered only one argument in support of Count 2's allegations. *See* Gov't Br. at 28. According to the

---

*See Pickett*, 353 F.3d at 68 ("This circuit has never considered the question of whether an indictment flawed by omission of an essential element is subject to harmless error review, nor need we today."). Because the government has not contested Mr. Verrusio's position that a defective indictment requires reversal, the government has waived that point, and the Court should treat it as undisputed in this case. *See Perdue Farms, Inc. v. NLRB*, 144 F.3d 830, 837 (D.C. Cir. 1998) (declining to address argument not raised in party's initial brief).

Further, because a defective indictment is not a "trial error," *i.e.*, one that "occurred during the presentation of the case to the jury," *see United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–49 (2006), it is properly considered a structural error*, see United States v. Resendiz-Ponce*, 549 U.S. 102, 116–17 (2007) (Scalia, J., dissenting) (explaining, as the only Justice to conclude that the indictment failed to allege an essential element, that a constitutionally deficient indictment is structural error) (citing *Gonzalez-Lopez*, 548 U.S. 140); *Neder v. United States*, 527 U.S. 1, 30–32 (1999) (Scalia, J., concurring in part and dissenting in part); *Pickett*, 353 F.3d at 70 (Rogers, J., concurring).

government, Count 2 adequately alleged an official act because the charging
language refers to "official assistance."  *Id*.  But the government's prior position
was that "official assistance," as a bare allegation, was not enough to allege an
official act.  The government instead focused its attention, as well as the attention
of the district court, on *other* allegations (in both the original Indictment and in the
superseding Indictment), and urged the district court to uphold Count 2 based on
those other, purportedly specific allegations.

> THE COURT: And so, when we're looking now at Count
> 2, aside from the notice issue, now the question is, and
> it's probably raised in the other prong here about the
> grand jury issue, the other question is whether those four
> alleged official acts are cognizable as official acts under
> the statute.  And so I was going to ask you if you have
> authority, direct authority for the proposition that those
> four do constitute official acts?  I may have interrupted
> your answer, but—
>
> [GOVERNMENT]: I think the Court's approaching it
> exactly correctly.  In other words, have we set forth the
> sufficient charging language in Count 2?  Clearly we
> allege all of the elements and then we specify that for
> official act we're talking about his official assistance—
> not just assistance but official assistance—as to the
> amendments sought by the construction company.  **The
> question as to whether or not the four examples of
> official assistance, I guess, get us past the hurdle of, do
> they qualify as an official act, once the Court has
> decided that at least one of those, namely the
> discussion about how to insert the amendment during
> the conference committee stage, once the Court has
> decided that at least one of those examples qualifies, it
> really becomes an issue for the jury** because—granted,
> the Court will always have the ability after having heard

6

the evidence of Mr. Verrusio's official acts and his
official duties, the Court will always have the ability to
decide that certain examples don't cut the mustard.

\*      \*      \*

[GOVERNMENT]: Your Honor, I'm trying not to get
turned around here.  What I'm saying is that we have
charged official assistance.  That's the official act.  **And
once the Court has determined that we have at least
some evidence of official assistance that would qualify
as an official act, namely that example we've been
discussing, then that's sufficient for the case to go to
the jury** and it's up to the jury to determine, after hearing
what qualifies as an official act through the Court's
instructions, whether or not that example or the others
actually were official acts, whether or not we've satisfied
our burden.

Appx. 161–64 (emphasis added).

The government continued to assert that position in its opposition to Mr.

Verrusio's motion to dismiss the superseding Indictment:  "Count 2 expressly

identifies five specific instances of official assistance [in paragraph 28] that

constitute the official acts performed and to be performed in connection with the

things of value Verrusio received from lobbyists."  Appx. 95.  At oral argument,

the government again focused the Court's attention on the five acts.  Tr. (9/1/2011)

at 38–40; Ver. Supp. Appx. 15–17.  And the district court addressed only the five

acts in its oral ruling, and never held that "official assistance" was, by itself, an

official act.  Appx. 173–80.  Accordingly, the government cannot rely on its

"assistance" theory before this Court.  *See United States v. Redman*, 331 F.3d 982, 986 (D.C. Cir. 2003).

Equally problematic for the government is that, in embracing its "official assistance" theory on appeal, it expressly abandoned its reliance on the five acts found in paragraph 28, the same five acts that the district court relied on to deny Mr. Verrusio's motion to dismiss.  *See* Gov't Br. at 28 ("Similarly, Verrusio's contention that Acts 1 and 3 lack specificity is beside the point when the specific 'official act' is assisting United Rentals win passage on the amendments.").  While it is understandable that the government did not want to argue before this Court that, for example, discussing legislation constituted an independent official act, *see* Indictment ¶ 28(c); Appx. 44, or that suggesting a letter-writing campaign was an independent official act, *see id.* ¶ 28(e); Appx. 45, that does not nullify the consequences of the government's decision.  Because the government did not ask this Court to uphold the Indictment based on the five acts, it would be improper for the Court to do so.  And, because the only argument actually made by the government was previously waived, the government is left without any defense of the Indictment.  Although this result may seem harsh, letting the government switch theories would unfairly prejudice Mr. Verrusio because it obscures the conduct he must defend.  The government should not be rewarded for playing a

8

shell game with Mr. Verrusio regarding the government's position on its own indictment.

**B.**     **Even If the Government Has Not Waived Its "Assistance" Theory, Count 2 Still Fails to Allege an Official Act Because "Assistance" Lacks a Direct Connection to the Governmental Decision-Making Process.**

If the government has not waived its opposition, then it must establish that the official act alleged in the Indictment involves the use of Mr. Verrusio's official position to influence the governmental decision-making process with respect to United Rentals' legislative interests in the Highway Bill. *See* Verrusio Br. at 25–27.

"Official act" is defined, in part, as an action "on" a matter, which raises the question: What does it mean for an act to be "on" a matter? As a matter of logic, *some* nexus is required between the act and the issue being decided by the government. And, although courts have rarely explored that relationship in detail, they have consistently applied gratuity law only to situations where the defendant's "act" involved using his official position to influence the decision-making process, as Mr. Verrusio explained in his Opening Brief. *See* Verrusio Br. at 22–24. That result makes sense, given that the purpose of the anti-gratuity statute is to prevent "the corruption of official decisions through the misuse of influence in governmental decision-making." *Valdes v. United States*, 475 F.3d 1319, 1324 (D.C. Cir. 2007).

Here, the government's "assistance" theory fails that test because, without saying *how* Mr. Verrusio was going to use his position, the connection between "official assistance" and the government's decision-making process is unknown. Alleging assistance is the functional equivalent of alleging a violation of the statute, and without more, that is not enough. In response, the government would presumably contend that the "how" is assistance through official acts. But this argument is circular because the "official acts" are defined as the assistance Mr. Verrusio provided to United Rentals. For that reason, Count 2 does not allege an essential element of the offense and should be dismissed.

### C. Even If the Government Has Not Waived Its "Assistance" Theory, Count 2 Still Fails to Allege an Official Act Because "Assistance" Lacks the Required Specificity.

*Sun-Diamond* requires the official act supporting a gratuities charge to be alleged with specificity. *See* Verrusio Br. at 25–27. That requirement serves two important purposes: It protects legal gratuities, and it preserves the delicate balance between gratuity and bribery law.

A public official accepts a legal gratuity when he receives an item of value meant to "build a reservoir of goodwill" that "might ultimately affect one or more of a multitude of unspecified acts, now and in the future." *Sun-Diamond*, 526 U.S. at 405. But the government's "assistance" theory would risk criminalizing legal gratuities by all but eliminating the need to identify a specific act. For example,

10

anytime a public official—in connection with, say, the acceptance of a free lunch at a conference—tells a constituent that he "supports their cause," or "will do what he can to help them," he would be committing a felony. The consequences of such a result may be why the government failed to cite any factually similar cases.

A specific act is also required by the interplay between gratuity and bribery law. After *Sun-Diamond*, courts were asked to extend the specificity requirement of the gratuity statute to other contexts, such as bribery and extortion. *See, e.g.*, *United States v. Ganim*, 510 F.3d 134, 145 (2d Cir. 2007). But courts correctly rejected that request because "[t]he same limiting principle is not needed in the extortion or bribery contexts." *Id*. at 146. In those cases, "it is the requirement of an intent to perform an act in exchange for a benefit . . . that distinguishes those crimes from both legal and illegal gratuities," and accordingly, as long as a promise to perform exists, it is not necessary "that the specific act to be performed was identified at the time of the promise." *Id* at 146–47.

In other words, if the government charges bribery and assumes the burden of proving a *quid pro quo*, then it receives the benefit of not having to connect the value received to a specific act, and can instead rely on a promise to perform future, unspecified acts. In contrast, if the government does not want to bear the burden of proving a *quid pro quo*, then it may allege a violation of the gratuities statute without having to do so, but it then assumes the burden of identifying and

11

proving a *specific* official act and can no longer rely on generalities such as future, unspecified assistance. That delicate balance between the two statutes will cease to exist, however, unless this Court rejects the government's "assistance" theory.

Although not explicit, the government appears to contend that the specificity requirement has been satisfied because the *subject* of Mr. Verrusio's alleged assistance was identified with particularity, *i.e.*, United Rentals' legislative ideas and the Federal Highway Bill. *See* Gov't Br. at 28–32. But that misses the point. Put another way, if the allegation was that United Rentals curried favor with Mr. Verrusio in the hope that it would improve its chances of inserting amendments into the Highway Bill, that allegation would contain the same level of specificity, but it would clearly not be actionable under the gratuities statute because no specific conduct was alleged. So too here. Because "assistance" says nothing about whether Mr. Verrusio was actually contemplating any specific acts involving his official position, it does not allege a specific act.

> **D.    Even if the Government Has Not Waived Reliance on the Five Acts, the Five Acts Do Not Allege an Official Act Because They Were Not Contemplated When Mr. Verrusio Accepted the New York Trip.**

According to the government, it is not required to allege that a public official actually intended to perform the act or that the act actually influenced the process. *See* Gov't Br. at 30–31. Mr. Verrusio does not disagree. But that is markedly different from arguing that the allegedly official acts do not need to be defined at

all. Rather, as the government repeatedly conceded before the district court, the specific acts must have at least been *contemplated* by the defendant when he received the thing of value.[2]

Here, although the government has eschewed reliance on the five acts in paragraph 28, to the extent those acts are still relevant, none of them were allegedly contemplated by Mr. Verrusio when he accepted the New York trip, and therefore, they cannot save Count 2 from dismissal.

## II.   THE GOVERNMENT FAILED TO PROVE THAT MR. VERRUSIO CONTEMPLATED A SPECIFIC OFFICIAL ACT.

The government does not dispute that Mr. Verrusio was provided with the New York trip because United Rentals was interested in developing a relationship with him and wanted him to be helpful with its legislative priorities. But that is where the agreement ends as the sides have very different views about the application of the law to those facts, and whether under a correct interpretation of the law, a reasonable juror could have convicted Mr. Verrusio of violating the gratuities statute. If Mr. Verrusio is correct that the government must prove he contemplated a specific official act, which by definition must have involved the use of his official position, when he accepted the New York trip, then the

---

[2] *See, e.g.*, Tr. (9/1/2011) at 21; Ver. Supp. Appx. 11; ("The fact that this is a forward-looking case means that such gratuities are crimes even where there is some uncertainty regarding how the official acts are going to be carried out, *so long as the official acts are contemplated at the time that the gratuity was given*.") (emphasis added); Gov't Mem. Adequacy of Indictment at 12; Appx. 61.

government failed to meet its burden because the evidence merely showed that Mr. Verrusio provided advice to Blackann prior to the trip, but did not raise the possibility of his personally taking any official action.

And, during the trip, Mr. Verrusio simply discussed United Rentals' legislative ideas and provided generic advice and publicly-available information regarding how United Rentals could achieve its goals.  But again, no witness testified that any specific official acts were discussed.  In fact, Blackann denied that he expected Mr. Verrusio to come in at conference to insert the amendments, Appx. 232, and Boulanger admitted he was unaware of any specific acts, Appx. 209–10.

For those reasons, a judgment of acquittal should be entered on Count 2, and the government does not dispute that a judgment of acquittal on Count 2 would require a new trial on Counts 1 and 3.

## III.   THE GOVERNMENT FAILED TO PROVE THAT MR. VERRUSIO MADE A FALSE AND MISLEADING STATEMENT.

As for Count 3, Mr. Verrusio and the government appear to agree that Mr. Verrusio did not list any gifts on Schedule VI; that no witness—expert or otherwise—testified with specific knowledge about what gifts are reportable on Schedule VI; and that no witness employed by the House Ethics Committee testified about potential uses of financial disclosure forms listing gifts or what could happen if one was filled out incorrectly.  Despite that agreement, the

14

government contends that it sufficiently proved the falsity and materiality elements

of 18 U.S.C. § 1001.

> **A.     A Reasonable Juror Could Not Find Falsity Because the Government Failed to Differentiate Between Reportable "Gifts" and "Travel."**

In response to Mr. Verrusio's argument that the jury could not determine

falsity without guidance on the difference between reportable "gifts" and third-

party "travel," the government contends that the jury had more than enough

evidence to draw that line.  *See* Gov't Br. at 50–52.  The government is wrong,

which could be due to the government's inaccurate reading of the record.

First, the government contends that any additional evidence on gifts/travel

was unnecessary because the participants "agreed that the trip did not involve

official factfinding."  *Id*. at 51.  The government thus concludes that the entire New

York trip was a gift.   But that conclusion incorrectly assumes that there are only

two possible results: either the New York trip was a gift or it was an "official

factfinding trip" (even though that apparent term-of-art was never defined).  That is

not correct, as the instructions to Schedule VII make clear—instructions that the

government prevented the jury from seeing.  Not to mention that only one of the

"sources" for the government's conclusion (Blackann) had ever worked in the

House (prior to 2001), and between 2001–05, he only participated in "three or

four" trips paid for by third parties, and was *never* involved with the process of

seeking approval from the Senate Ethics Committee or filling out a disclosure form during that time.  Appx. 222–23.

Second, the government argues that Mr. Verrusio's current position contradicts his opposition to an expert witness proposed (and then withdrawn) by the government before trial.  *See* Gov't Br. at 52.  According to the government, Mr. Verrusio "strenuously" argued that Kent Cooper's testimony was "unnecessary because the financial disclosure form, especially when considered alongside the instructions to Schedule VI (Defense Exhibit 149), was 'self-explanatory.'"  *Id.* The government ignores not only its own stated reasons for offering the testimony of Cooper, but the actual substance of Mr. Verrusio's challenge.

Cooper was never offered by the government as an expert who would opine on the application of the House financial disclosure rules, *i.e.*, the falsity of Mr. Verrusio's Schedule VI.  *See* Tr. (3/18/2010) at 25; Ver. Supp. Appx. 4 ("[GOVERNMENT]:  The government is not seeking to elicit any opinions from this individual . . . .").  In response to Cooper's proposed testimony explaining the form *itself*, Mr. Verrusio did argue that the form did not require explanation by Cooper because it was self-explanatory.  But Mr. Verrusio never argued that the jury should be left to its own devices when drawing the line between reportable gifts and travel.  To the contrary.  Mr. Verrusio's opposition to Cooper was based in large part on his belief that the government intended to introduce the entire

16

instructions to Schedule VII—a reasonable belief given that the government had recently identified the instructions as a trial exhibit.[3]  At trial, the government reversed course and successfully *opposed* the admission of the instructions to Schedule VII.  Therefore, Mr. Verrusio's prior arguments regarding the admissibility of Cooper's proposed expert testimony have little to no relevance here.

As the government explained below, "there are terms on Schedule 6 and elsewhere on the form that are not a model of clarity and deal with issues that do not fall within the competence or common knowledge of an average juror."  Tr. (3/18/2010) at 27:20–23; Ver. Supp. Appx. 6.  Mr. Verrusio agrees that the jury could not have competently concluded that the New York trip was solely a gift based just on the form itself.  This is not to say that the government could only meet its burden through expert testimony, but it had to do something more than introduce just the form, otherwise a reasonable jury lacked the evidence necessary to support a finding of falsity.

---

[3] *See* Tr. (3/18/2010) at 12:22–13:4; Ver. Supp. Appx. 1–2 ("[MR. VERRUSIO]: But in the exhibits that they provided to us, they have said they're going to include the instructions about completing the form.  So, I don't think—if they are going to do that, they don't need the expert testimony, if they're going to—and I think the government will tell you when they come up to argue that they will be submitting the instructions as an exhibit on how to complete for form, which I think obviates the need for the expert testimony.").

**B.    A Reasonable Juror Could Not Find Materiality Because the Government Failed to Introduce Any Evidence (Which It Easily Could Have) Concerning How Accurate Reporting by Mr. Verrusio Could Have Influenced the Conduct of the Ethics Committee.**

The government argues that it proved materiality, *inter alia*, because Paul Lewis testified that he reviewed the financial forms generally, conduct that the government analogizes to that in *United States v. Stadd*, 636 F.3d 630 (D.C. Cir. 2011). *See* Gov't Br. at 53.   But *Stadd* only serves to highlight the deficiencies of the government's proof.  There, the testimony was that NASA was already paying close attention to Stadd's compliance with ethical rules, and the evidence supported a conclusion that accurate disclosure would have raised "red flags" that would have led to further investigation.  *Stadd*, 636 F.3d at 638–39.  In contrast, Lewis's testimony was that his function was largely ministerial, and that he focused on confirming that the forms were filled out completely.  Appx. 459–60.  Notably, he never testified about what he would do, if anything, if he saw that a filer reported a gift on Schedule VI.  Nor did he testify about what could happen if a filer, such as Mr. Verrusio, reported a gift, such as the New York trip.  For whatever reason, the government chose to not elicit that type information from Lewis, even though it easily could have.

Accordingly, the government failed to prove materiality.

18

## IV.   A CRIMINAL DEFENDANT'S RIGHT TO PRESENT A DEFENSE SHOULD TRUMP A POLITICIAN'S RIGHT TO HIDE HIS SECRET DEALINGS WITH LOBBYISTS.

The government argues that the district court's decision to quash Vivian Curry's trial subpoena is not reversible error because (i) Mr. Verrusio waived his right to the testimony; (ii) even if he did not waive his right, it is irrelevant because the protections of the Speech or Debate Clause are absolute; (iii) even if protections of the Speech or Debate Clause are not absolute, there was no violation of Mr. Verrusio's rights because Curry's proposed testimony was not material; and (iv) even if Mr. Verrusio's rights were violated, dismissal is not the proper remedy. *See* Gov't Br. at 32–42.  The government is wrong on each count.

### A.   Mr. Verrusio Did Not Waive His Challenge to the District Court's Application of the Speech or Debate Clause.

The government contends that Mr. Verrusio waived his objection to the district court's application of the Speech or Debate Clause.  *See* Gov't Br. at 37–42.  The government does not, however, argue that Mr. Verrusio failed to properly raise the issue or that the district court did not have an opportunity to rule on it. *See id*.

Waiver is an equitable concept.  There is no "bright-line rule" to determine when an issue has been raised, and the ultimate question is "whether in light of the policies behind the rule of waiver plaintiff sufficiently raised the issue below so that waiver should not apply."  *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949

F.2d 415, 422 (D.C. Cir. 1991).  But the rule still requires "a conscious, strategic decision to intentionally relinquish or abandon a known right."  *United States v. Joaquin*, 326 F.3d 1287, 1291 (D.C. Cir. 2003).  The actual facts of this case make clear that there was no waiver.

Mr. Verrusio served Curry with a trial subpoena on January 19, 2011.  Appx. 133.  The trial began on January 25, 2011.  During the first week of trial, several witnesses testified about Curry's involvement in United Rentals' lobbying efforts, and the government introduced into evidence many statements by Curry.  Curry lodged no objection as the government repeatedly used what Curry would subsequently assert is privileged material.  But, on February 1, 2011, the day before Mr. Verrusio was to begin his defense, Curry filed her motion to quash.  Appx. 131–51.  Over the next 24 hours, at the district court's urging, Mr. Verrusio worked diligently with Curry to develop a solution that would allow Curry to testify and would also respect her perceived rights under the Speech or Debate Clause.  *See* Tr. (2/1/2011, afternoon) at 157–62; Ver. Supp. Appx. 19–23.  Curry rebuffed all efforts.  *See* Tr. (2/3/2011, morning) at 110–12; Ver. Supp. Appx. 26–28.  It was only then that the district court considered the motion to quash.

On those facts, the government would have this Court believe that Mr. Verrusio's efforts were all a ruse, a devious plot to deny him access to Curry's testimony.  *See* Gov't Br. at 37–42.  But, even the single sentence quoted by the

government, on which its entire waiver argument rests, does not support the wholesale waiver argument made by the government.  In relying on that statement, the government conveniently ignores the fact that Curry's proffered testimony went far beyond simply discussing her statements to lobbyists; at the very least, it also included what the lobbyists had said to her.  And, although Mr. Verrusio acknowledged the force of Curry's argument on that point, he also expressed uncertainty about whether the privilege applied to all of Curry's potential testimony.  That is far from "a conscious, strategic decision to intentionally relinquish or abandon a known right."

And, shortly thereafter, Mr. Verrusio unquestionably argued that the district court's application of the Speech or Debate Clause violated his right to present a defense.  Appx. 365–76.  Yet, when Mr. Verrusio made that argument, neither the district court nor the government contended that there was no violation because Mr. Verrusio had already agreed that the protections of the Speech or Debate Clause were absolute.  *Id*.  If the government believed that Mr. Verrusio had just a few days earlier agreed that he had no right to call Curry, presumably the government would have noted that fact.

Accordingly, there was no waiver, and because the correct interpretation of the Speech or Debate Clause is a question of law, this Court should review the district court's decision to quash Curry's subpoena *de novo*.

**B.    No Court Has Ever Used the Speech or Debate Clause to Deny a Criminal Defendant Access to Material Evidence.**

The government spends many pages describing cases that have analyzed the Speech or Debate Clause, and repeatedly takes Mr. Verrusio to task for failing to cite any authority to support his argument that an exception to the Speech or Debate Clause exists under limited circumstances. *See* Gov't Br. at 37–41.  Yet missing from the government's discussion is a single case holding that a criminal defendant's right to present material evidence is inferior to a member of Congress's right to keep his dealings with lobbyists secret.  That is because no court has done so, and this Court should not be the first.

The government's reliance on primarily civil cases ignores the fundamental difference those cases have with this one:  Mr. Verrusio is not a civil litigant; he is a criminal defendant, fighting the government for his freedom and for the right not to be wrongly-branded a felon for the rest of his life.  Under these circumstances, it is perfectly reasonable to apply the Speech or Debate Clause more narrowly.

To support its proposed interpretation, the government analogizes the legislative privilege to other, purportedly absolute privileges, such as the privilege against self-incrimination.  *See* Gov't Br. at 37–40.  But even the self-incrimination privilege is not truly absolute:  Under 18 U.S.C. § 6002, a witness can be compelled to testify—despite a valid invocation of the self-incrimination privilege—as long as he receives immunity.  *See United States v. Slough*, 641 F.3d

22

544, 549 (D.C. Cir. 2011). While a similar grant of statutory authority does not exist with respect to the Speech or Debate Clause, it demonstrates that form should not be valued over substance in certain cases. If a criminal defendant's request for material evidence would not burden the functioning of Congress, then the Speech or Debate Clause has served its purpose, and disclosure should be required.

While the government embraces the self-incrimination privilege, it attempts to distinguish the many privileges identified by Mr. Verrusio whose application turns on a balancing test because those privileges are "neither absolute nor expressly conferred under the Constitution." *See* Gov't Br. at 40. But the government never explains why two privileges (legislative and executive), both grounded in the Constitution, with similar purposes, should be treated so differently. *See id*. The government's position amounts to a belief that the President's interest in national security deserves *less* protection than Curry's discussions with lobbyists, where those discussions were more than seven-years old, and did not involve any core legislative activities. That should not be the case.

Because of the importance of a criminal defendant's right to present a defense, the Court should find that an exception exists to the otherwise absolute nature of the Speech or Debate Clause.

23

### C.   Mr. Verrusio Repeatedly Explained Why Curry's Testimony Was Material.

The government contends that "[Mr. Verrusio's only showing as to the materiality of Curry's anticipated testimony was a proffer that 'she would provide much greater context and factual evidence that would support our theory of the case.'" *See* Gov't Br. at 35.  Not so.  Mr. Verrusio made several detailed proffers.

For example, the day that Curry filed her motion to quash, Mr. Verrusio proffered that he may elicit testimony from Curry about her interactions with Hirni, including his offer to buy her lunch and his offer of tickets to a sporting event.  *See* Tr. (2/1/2011, afternoon) at 150; Ver. Supp. Appx. 18.  The next day Mr. Verrusio noted that her expected testimony "would be covering the topics on the e-mails that previously have been introduced at this trial, including Government Exhibit 88, among others." *See* Tr. (2/2/2011, afternoon) at 126; Ver. Supp. Appx. 25.  Mr. Verrusio also noted that Curry was expected "to explain away the fact that Mr. Verrusio was not in fact inserting himself in the process, that he was not placing the pressure on her, that she independently was communicating with Mr. Hirni, and that she has no recollection of any pressure being put on her by Mr. Verrusio." Appx. 342; *see also* Appx. 344.

The government's argument that the need for her testimony was mooted because some of the *government's* evidence was stricken misses the point.  *See* Gov't Br. at 43.  As argued before the district court, the point of calling Curry was

24

not simply to rebut the government's proof:  Curry had her own independent value to Mr. Verrusio's defense.  Even if Curry's name had never been uttered during the government's case-in-chief, that would not negate the benefit to Mr. Verrusio of showing, for example, that Hirni discussed United Rentals' legislative strategy with Curry and never mentioned Mr. Verrusio.  Further, unlike Blackann, Boulanger, and Hirni, Curry would not have been testifying pursuant to a plea agreement, arguably giving her more credibility.

For those reasons, Mr. Verrusio established that Curry's testimony was not only material, but critical to his defense.

### D.    If a Branch of the Government Stands on a Privilege to Deny a Defendant Access to Material Evidence, the Only Acceptable Remedy is to Dismiss the Indictment.

Assuming that the district court's application of the Speech or Debate Clause was correct, the government contends that Mr. Verrusio's only remedy was to have other testimony stricken, and analogizes this case to one where a defendant's cross-examination rights were violated by the invocation of a privilege.  *See* Gov't Br. at 43.  But those are plainly not the facts of this case.  While Curry's testimony would have gone, in part, to rebut and clarify prior testimony, her testimony also had independent value.  Striking testimony obviously does not cure Mr. Verrusio's inability to present that affirmative evidence in his defense.

25

And, while the government is correct that a defendant's right to present a defense cannot overcome many traditional privileges held by private citizens, *see* Gov't Br. at 44, this is not that case.  As this Court implicitly recognized in *Christoffel v. United States*, 200 F.2d 734, 739 (D.C. Cir. 1952), when it comes to a defendant's access to material evidence, the only question should be whether it is the government, writ large, that has invoked a privilege.  If it is, whether the Executive or Legislative Branch, then a court should not tolerate a conviction based on a partial view of the evidence.  That result is fair and just.

It is especially fair in this case.  Congress, presumably, desires to see the laws that it enacts enforced.  The gratuities laws were enacted to prevent government corruption.  Here, Congress had an opportunity to participate in a proceeding aimed at preventing corruption in Congress.  Congress chose not to, preferring instead to keep Curry's seven-year old conversations with lobbyists behind closed doors.  Mr. Verrusio should not be punished for that decision.

## V.     THE RELEVANCE OF DEFENSE EXHIBIT 149 SHOULD NOT BE VIEWED THROUGH THE GOVERNMENT'S THEORY OF THE CASE.

The government argues that the instructions to Schedule VII "were not relevant and were likely to confuse the jury."  *See* Gov't Br. at 53–54.  The government has waived the second point and is mistaken on the first.

26

Relevance and "confusing" are two separate objections—Federal Rule of Evidence 401 addresses relevance, and Rule 403 covers relevant, but confusing evidence.  Below, the government only raised relevance (and hearsay) objections, Appx. 310–17, and therefore, any objection based on the purportedly confusing nature of the instructions has been waived.

As to relevance, the thrust of the government's argument is that the instructions were not relevant because they "make clear that the 'not provided merely for your personal benefit' provision applies to the filer's outside business-related travel and would not apply to travel for baseball games, lap dances, and the like."  *See* Gov't Br. at 56.  But the government incorrectly describes Mr. Verrusio's position as being that travel for "baseball games" and "lap dances" is reportable on Schedule VII.  *See* Gov't Br. at 56.  Mr. Verrusio has never contended that travel, solely for the purpose of going to a baseball game or a night club, is not a gift.  His position was clearly that, extracurricular activities aside, the trip to New York had a significant business element to it, and therefore was "not provided merely for [his] personal benefit."  Tellingly, the government fails to address the fact that both Hirni and Ehrlich testified that the trip had a significant business purpose.  *See* Verrusio Br. at 55.

The government's flawed view of Defense Exhibit 149 may stem from application of the wrong standard.  The government argues that the instructions

were "not necessary" because the jury heard "other evidence" that Mr. Verrusio could have relied on to support his theory.  *See* Gov't Br. at 56.  The issue is relevance, not necessity.

Similarly, the government observes that Mr. Verrusio failed to object to the certain questions lodged by the government to Blackann and Hirni regarding whether Mr. Verrusio's sought pre-approval, but never explains why that fact is in any way important.  Mr. Verrusio is not claiming that the entire subject of pre-approval was irrelevant.  If the government believed that Mr. Verrusio's purported failure to get pre-approval was a worthwhile fact to elicit—despite the lack of a pre-approval requirement for trips under four days—then it was the government's prerogative to do so.  But it also means that Mr. Verrusio then has a right to meet that evidence.  And that is the problem with the district court's ruling—it prevented Mr. Verrusio from directly rebutting the suggestion that he needed to get pre-approval.

Finally, because the instructions to Schedule VII were critical evidence supporting Mr. Verrusio's defense, the district court's error was not harmless.

## CONCLUSION

For those reasons, a judgment of acquittal should be entered on all Counts. Alternatively, all for each reason alone, and especially when combined, this Court should reverse all three convictions and remand the case for new trial.

Dated: April 10, 2013

Respectfully submitted,

*/s/ Richard Sobiecki*
Richard P. Sobiecki
Vernon A.A. Cassin III
Baker Botts L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
rich.sobiecki@bakerbotts.com
(202) 639-7700

A.J. Kramer
Federal Public Defender
Rosanna Taormina
Assistant Federal Public Defender
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
A._J._Kramer@fd.org
Rosanna_M_Taormina@fd.org
(202) 208-7500

*Counsel for Appellant Fraser Verrusio*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(C) because this brief contains 6,937 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in 14-point Times New Roman Font.

Dated:  April 10, 2013

/s/ Richard Sobiecki

Richard Sobiecki

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2013, I filed and served the foregoing Reply Brief by electronic service through the CM/ECF system to all counsel of record.

In addition, pursuant to D.C. Circuit Rule 31(b) and this Court's Administrative Order Regarding Electronic Case Filing, I will cause to be mailed to the Court eight paper copies of this brief within two business days of this filing.


*/s/ Richard Sobiecki*

Richard Sobiecki